IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

UNITED STATES OF AMERICA,

Respondent-Appellee,

v.

BRANDON BERNARD,

Defendant-Appellant.

On appeal from the United States District Court
for the Western District of Texas at Waco
District Court Case No. 6:04-CV-164

The Honorable Lee Yeakel,
United States District Judge

**BRIEF IN SUPPORT OF
APPLICATION FOR CERTIFICATE OF APPEALABILITY**

Robert C. Owen
Bluhm Legal Clinic
Northwestern Pritzker School of Law
375 East Chicago Avenue
Chicago, IL 60611
Phone: (312) 503-0135
Email: robert.owen@law.northwestern.edu
Texas Bar No.: 15371950

John R. Carpenter
Asst. Federal Public Defender
1331 Broadway, Suite 400
Tacoma, Washington 98402
Phone: (253) 593-6710
Email: john_carpenter@fd.org
Washington Bar No.: 23301

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons have an interest in the outcome of this case, although with the exception of the Defendant-Appellant, none of those interests are financial. These representations are made in order that the Judges of this Court may evaluate possible disqualification or recusal:

Brandon Bernard, Defendant-Appellant;

Robert C. Owen and John Carpenter, counsel for Mr. Bernard in this appeal and in the court below (and, with respect to Mr. Owen, on direct appeal);

Robert H. Gombiner, counsel for Mr. Bernard in the court below;

Walter M. Reaves, Jr., counsel for Mr. Bernard on direct appeal;

Russell D. Hunt, Sr., and Russell D. Hunt, Jr., trial counsel for Mr. Bernard;

Mark R. Stelmach, counsel for the Government in the court below and in this appeal;

Angela J. Moore, counsel for the Government on direct appeal;

James William Blagg, Mark L. Frazier, and Capt. Scott L. Frost, trial counsel for the Government;

Hon. Walter S. Smith, Jr., United States District Judge (retired), trial judge; and

Hon. Lee Yeakel, United States District Judge, presiding judge in the proceedings below under Fed. R. Civ. P. 60(b).

i

## STATEMENT REGARDING ORAL ARGUMENT

How this Court resolves the issues in this case will bear directly on the integrity of the court system in the gravest of matters—proceedings related to imposing and reviewing a sentence of death. *See Kyles v. Whitley*, 514 U.S. 419, 422 (1995) (noting the judicial duty to examine claims of error in capital cases "with painstaking care")(citation omitted). Given the unusual procedural posture of this appeal and the vital interests that hang in the balance—both the probity of the federal court system and Brandon Bernard's life—the Court would benefit from the opportunity to hear from counsel in person.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ........................................................i

STATEMENT REGARDING ORAL ARGUMENT ............................................. ii

TABLE OF AUTHORITIES .................................................................................v

I. JURISDICTION ...............................................................................................1

II. ISSUE PRESENTED ......................................................................................2

III. STATEMENT OF THE CASE.......................................................................3

    A.    Walter Smith was unfit to preside as a judge in 1998 and committed gross ethical violations in responding to the investigation of his prior conduct that the Fifth Circuit Judicial Council opened in 2014; no evidence indicates that Smith's impairment diminished while he presided over Bernard's trial and later his post-conviction proceeding, and his behavior suggests that it continued unabated.......................................................3

    B.    Judge Smith's behavior as he presided over the pretrial and trial proceedings in Bernard's case was consistent with what is now known to have been his serious impairment eighteen months earlier.......................................................................................6

    C.    Despite trial errors that may well have been rooted in Judge Smith's impairment, the judgment was affirmed on direct appeal.........................................................................................9

    D.    After Bernard sought collateral review, Judge Smith failed to take any action at all on the case for more than seven years, again suggesting his continuing impairment......................................10

    E.    Employing a standard that the Supreme Court subsequently rejected as too onerous, this Court denied Bernard a COA that would have allowed him to challenge the merits of Judge Smith's rulings. .................................................................................13

F.      Seeking relief from the effect of these procedural defects on the judgment in his § 2255 proceeding, Bernard filed his Rule 60(b) Motion. ...................................................................................14

IV. SUMMARY OF ARGUMENT ........................................................................14

V. ARGUMENT ...................................................................................................16

A.      The COA standard is satisfied here because a reasonable jurist could find Bernard's claim—that unusual procedural defects in the course of his § 2255 action sapped the proceeding of any integrity—to warrant further development; the COA standard does not require Bernard to show at this juncture that he will prevail in this appeal if a COA is granted and the merits are reached..........................................................................................16

B.      A fundamental purpose of Rule 60(b) is to provide an exception to finality when fairness demands it....................................................18

C.      A COA should issue here. ..............................................................20

VI. CONCLUSION..............................................................................................25

CERTIFICATE OF SERVICE .............................................................................27

CERTIFICATE OF COMPLIANCE ....................................................................28

iv

# TABLE OF AUTHORITIES

**FEDERAL & STATE CASES**

*Buck v. Davis*,
137 S. Ct. 759 (2017) ..................................................................passim

*Coble v. State*,
330 S.W.3d 253 (Tex. Crim. App. 2010) ...................................... 10

*Coleman v. Stephens* (*In re Coleman*),
768 F.3d 367 (5th Cir. 2014) ........................................................ 22

*Gonzalez v. Crosby*,
545 U.S. 524 (2005) ........................................ 18, 19, 21, 22, 23, 24

*Henslee v. Union Planters Nat'l Bank & Tr. Co.*,
335 U.S. 595 (1949) ...................................................................... 25

*In re Pickard*,
681 F.3d 1201 (10th Cir. 2012) .................................................... 22

*Kyles v. Whitley,*
514 U.S. 419 (1995)........................................................................ ii

*Liljeberg v. Health Servs. Acq. Corp.*,
486 U.S. 847 (1988) ...................................................................... 20

*Miller-El v. Cockrell*,
537 U.S. 322 (2003) ................................................ 13, 16, 17, 24

*Reid v. True*,
349 F.3d 788 (4th Cir. 2003) ........................................................ 17

*Sears v. Upton*,
561 U.S. 945 (2010) ........................................................................ 8

*Seven Elves, Inc. v. Eskenazi*,
635 F.2d 396 (1981) ................................................................ 19, 24

*Slack v. McDaniel*,
529 U.S. 473 (2000) ................................................................ 13, 16

*Stevens v. Epps*,
618 F.3d 489 (5th Cir. 2010) ........................................................ 17

*Tennard v. Dretke*,
 542 U.S. 274 (2004) ......................................................................... 13

*Thornburg v. Mullin*,
 422 F.3d 1113 (10th Cir. 2005) ...................................................... 17

*United States v. Bernard*,
 299 F.3d 467 (5th Cir. 2002) ..................................................... 1, 8, 9

*United States v. Bernard*,
 762 F.3d 467 (5th Cir. 2014) ................................................. 1, 10, 13

*United States v. Fields*,
 483 F.3d 313 (5th Cir. 2007) ............................................................. 7

*United States v. Gonzalez*,
 493 F. App'x 541 (5th Cir. 2012) .................................................... 17

*United States v. Rivas-Lopez*,
 678 F.3d 353 (5th Cir. 2012) .......................................................... 17

*United States v. Vialva,*
 No. W-99-CR-70 (10), Civ. No. 04-CV-163 ...................................... 7

*Woodford v. Visciotti*,
 537 U.S. 19 (2002) .......................................................................... 18

**FEDERAL STATUTES**

18 U.S.C. § 3005 ........................................................................ 7, 9, 23

18 U.S.C. § 3592 .................................................................................. 8

28 U.S.C. § 1291 .................................................................................. 1

28 U.S.C. § 2253 .................................................................. 1, 16, 17, 24

28 U.S.C. § 2254 ................................................................................ 18

28 U.S.C. § 2255 .......................................................................... passim

**OTHER**

Fed. R. Civ. P. 59(e) .......................................................................... 12

Fed. R. Civ. P. 60(b) .................................................................... passim

Tommy Witherspoon, *"Federal Judge Smith retires during ongoing
 investigation,"* Waco Tribune-Herald (September 19, 2016) ............. 6

# I. JURISDICTION

Appellant was convicted on capital charges and sentenced to death in the Western District of Texas in 2000; the judgment was affirmed on appeal. *United States v. Bernard*, 299 F.3d 467, 471 (5th Cir. 2002). The district court denied Appellant's motion for post-conviction relief pursuant to 28 U.S.C. § 2255, and this Court denied a Certificate of Appealability (COA). *See United States v. Bernard*, 762 F.3d 467 (5th Cir. 2014). Invoking Fed. R. Civ. P. 60(b), Appellant moved below to vacate the district court's judgment denying his § 2255 motion. He alleged that the adverse ruling had been infected by procedural defects flowing from the presiding judge's incapacity, and that the appellate process had been truncated by the application of an erroneous standard of review—issues which had never been reviewed by any court.

Despite the fact that Appellant's 60(b) motion challenged procedural defects that occurred in the course of the original § 2255 proceeding, the district court deemed it a successive application for relief under § 2255. Accordingly, the district court concluded that it lacked jurisdiction to evaluate what impact those defects may have had on the judgment. ROA.2253-59. The district court denied a Certificate of Appealability. ROA.2259. Bernard gave timely notice of appeal on February 19, 2018. ROA.2260-61. This Court will acquire jurisdiction over this appeal by granting a COA. *See* 28 U.S.C. §§ 1291 and 2253.

## II. ISSUE PRESENTED

Brandon Bernard's 60(b)(6) motion raised procedural contentions never before ruled on by any court: that District Judge Walter Smith's documented unfitness to sit as a federal judge, coupled with this Court's misapplication of the COA standard (as subsequently observed and corrected by the Supreme Court in another capital habeas case brought via Rule 60(b)(6)), wrongfully deprived Mr. Bernard of meaningful collateral review under 28 USC § 2255. The district court ruled that it lacked jurisdiction to evaluate those procedural defects, concluding that because Bernard's ultimate aim was to have his case reopened so that the claims he presented in his § 2255 motion could be fairly evaluated, the court had no choice but to treat his 60(b) motion as a successive habeas petition.

But Supreme Court and Fifth Circuit precedent both hold that a fundamental purpose of Rule 60(b)(6) is to provide an exception to finality in unusual circumstances such as the ones presented by this case, where procedural defects marred the integrity of the earlier proceedings. In such circumstances, a successful Rule 60(b)(6) motion inevitably confers jurisdiction on the district court to reevaluate the merits of claims that were advanced and decided in earlier habeas proceedings. The district court's rationale is thus impossible to reconcile with applying Rule 60(b) in habeas cases at all. On these facts, could reasonable jurists

debate the correctness of the district court's sweeping legal conclusion that it lacked jurisdiction to evaluate the merits of Bernard's Rule 60(b)(6) motion?

### III. STATEMENT OF THE CASE

**A. Walter Smith was unfit to preside as a judge in 1998 and committed gross ethical violations in responding to the investigation of his prior conduct that the Fifth Circuit Judicial Council opened in 2014; no evidence indicates that Smith's impairment diminished while he presided over Bernard's trial and later his post-conviction proceeding, and his behavior suggests that it continued unabated.**

Around 1998, Walter S. Smith, then the only district court judge sitting in the Waco Division of the Western District of Texas, was making unwelcome sexual advances to at least one member of the courthouse staff. ROA.2139. He also apparently had a habit of drinking alcohol during the workday. ROA.2141-42. One sexual assault victim of Smith's testified that Smith's law clerk telephoned her during this time frame, imploring her to "do something" about the fact that Smith was "not functioning," was "falling apart," and was unable even to get himself to the courthouse, adding that Smith's condition had forced him to cancel court obligations. ROA.2143.

There is no evidence that Smith or any supervising authority sought to corral or cure Smith's behaviors for more than fifteen years after the incident described above, even though the victim reported the sexual assault to her supervisor. ROA.2141. Instead, business went on as usual, with Judge Smith continuing to be

assigned cases, including the capital case that underlies this current appeal, which was assigned to him on July 13, 1999, shortly after the incidents described above.[1] ROA.5.

Smith's judicial unfitness escaped all meaningful public scrutiny until September 2014, when a judicial misconduct complaint was lodged against him. ROA.2130. In response, the Judicial Council of the Fifth Circuit appointed a Special Committee to investigate Smith. ROA.2130. That investigation found that Smith made "inappropriate and unwanted physical and non-physical sexual advances toward a court employee…" ROA.2130-31. The investigation further revealed that Smith routinely failed to adhere to even the most obvious of standards designed to assure the integrity of federal judicial proceedings to which he was assigned. For example, Smith allowed the lawyer who was representing him in the judicial misconduct investigation to continue to appear before him on other matters. Not only did Smith fail to recuse himself from those cases, he did not even properly disclose to counsel for the other party that their opposing counsel was simultaneously serving as the Judge's own personal attorney. ROA.2131-32.

---

[1] Bernard's trial took place in 2000. He was tried and convicted of three capital offenses related to the murders of Todd and Stacie Bagley, but sentenced to death for only one of those offenses. ROA.340, 362, 374.

It seems incredible that it would be necessary to order a federal judge to stop engaging in such patently improper behaviors, but this is exactly what the Judicial Council of the Fifth Circuit was forced to do, in an attempt "to preserve public confidence in the judiciary." ROA.2132 n.1.[2]

The Council also explicitly found that Smith completely failed to "understand the gravity of such inappropriate behavior and the serious effects that it has on the operation of courts," see *id.* at 2-3. This profound lack of insight is evidenced by the fact that, while attempting to defend his actions before the Council, Smith allowed "false factual assertions" to be advanced on his behalf. ROA.2131. The Council found that these "false assertions," coupled with Smith's delays in ultimately admitting wrongdoing, "contributed greatly to the duration and cost of the investigation." ROA.2131. Behavior of this sort would earn an ordinary criminal defendant an obstruction of justice charge, but Smith fared much better. He was not criminally charged, and did not face losing his position on the bench. The Council did, however, deem Smith unfit to take any new cases for one year and ordered him to undergo sensitivity training. ROA.2131-33.

---

[2] Of course, the very fact that Smith's better judgment was unable to master his improper behavior suggests that his behavior was being shaped by powerful influences he could not control, *e.g.*, substance abuse, psychological impairment, or some combination of similar factors. Absent outside intervention, those types of influences could endure for years.

But then more women leveled allegations of sexual harassment against Smith, and the adequacy of the initial investigation and punishment were called into serious question. ROA.2136. The Judicial Conference Committee ordered the Fifth Circuit to reassess Smith's punishment and examine whether there was a pattern and practice to his behavior. ROA.2136. In 2017, Smith abruptly retired, short-circuiting that further investigation while ensuring he would receive $203,100 from U.S. taxpayers each year for the rest of his life.[3] Concluding that Smith's retirement deprived it of jurisdiction, the Judicial Council closed the case. ROA.2136-37.

**B. Judge Smith's behavior as he presided over the pretrial and trial proceedings in Bernard's case was consistent with what is now known to have been his serious impairment eighteen months earlier.**

As noted above, in the course of the investigation into his own unlawful and unethical behavior, Smith placed on vivid display his indifference and hostility to mechanisms designed to ensure procedural fairness. The record shows that his dismissive treatment of Bernard's case reflected those same attitudes.

In one of his very first actions in Bernard's case, Smith gave Congress the back of his hand by refusing to follow a procedural statute specifically designed to ensure that a federal defendant on trial for his life would have the assistance of

---

[3] *See* Tommy Witherspoon, *"Federal Judge Smith retires during ongoing investigation,"* Waco Tribune-Herald (September 19, 2016).

specially qualified counsel—a lawyer "learned in the law applicable to capital cases[.]" 18 U.S.C. § 3005. If a capital prosecution is brought in a district that has a Federal Public Defender organization, § 3005 requires the presiding judge to consult with the Federal Public Defender in assigning counsel. *Id*. Without explanation, cause, or concern, Smith spurned the opportunity to consult with the FPD for the Western District of Texas in order to identify appropriately qualified counsel for Bernard, and instead appointed a local attorney of his acquaintance.[4] ROA.1392.

This defect profoundly impacted the integrity of the proceedings, as many violations of Bernard's rights trace directly to Smith's refusal to honor the appointment statute. The lawyer Smith appointed as lead counsel, and the lawyer Smith later appointed as second chair (the son of first-chair counsel), committed a string of errors that made a shambles of Bernard's defense; expecting for months that Bernard would ultimately be offered (and accept) a negotiated guilty plea, they barely prepared for trial and they waived opening statements at both phases. ROA.123-24; ROA.1299-1300; ROA.3906; ROA.5131. Perhaps the most troubling errors related to their feeble case in mitigation of punishment for their eighteen-year-old client. This was unquestionably the most important part of this trial, because any

---

[4] Smith likewise violated § 3005 in appointing counsel on two other occasions, and both of those defendants also ended up on the federal death row. *See United States v. Christopher Vialva*, Cr. No. W-99-CR-70(10), Civ. No. 04-CV-163, *Motion for Relief from Judgment*, dkt. no. 553 at 13, *see also id.*, dkt. no. 553-1 (supporting exhibit); *United States v. Fields*, 483 F.3d 313, 347-48 (5th Cir. 2007).

reasonable lawyer would have doubted the chances for an acquittal. Yet Bernard's trial counsel largely delegated to Bernard's mother the task of identifying and securing mitigation witnesses, a practice squarely condemned by the Supreme Court in *Sears v. Upton*, 561 U.S. 945 (2010); ROA.1327.

And in those few instances where Bernard's lethargic trial counsel actually sought to protect their client, Smith neutralized their efforts. For example, over defense objection, Smith improperly instructed the jury at the penalty phase with an aggravating factor that was unsupported by the evidence, directing jurors to consider whether the crime had been committed for "pecuniary gain." *See Bernard*, 299 F.3d at 483-84 (finding error); *see also* 18 U.S.C. § 3592(c)(8) (making it an aggravating factor that the offense was "committed … as consideration for the receipt, or in the expectation of the receipt, of anything of pecuniary value"). Having been improperly instructed, the jurors then wrongly found that this unsubstantiated aggravating factor applied against Bernard, and weighed that finding in deciding his fate.

Judge Smith also committed plain error when he allowed the mother of Stacie Bagley to characterize the defendants in her victim impact testimony as hard-hearted and lacking any regard for human life, testimony which this Court acknowledged could "serve no other purpose than to inflame the jury and divert it from deciding the case on relevant evidence concerning the crime and the defendant." *Bernard*, 299 F.3d at 480.

Although this Court found these errors insufficiently harmful to warrant reversal, such departures from the standard of heightened reliability that is constitutionally mandated for procedures in a death penalty case are troubling, and Judge Smith was responsible for both of them.

The Government committed its fair share of errors as well, including *Napue* and *Brady* violations, as alleged in detail in Mr. Bernard's § 2255 petition. ROA.466, 695-707.

Even with all of these errors, the jury voted to spare Bernard's life on two of the three capital counts. ROA.340, 362, 374.

**C. Despite trial errors that may well have been rooted in Judge Smith's impairment, the judgment was affirmed on direct appeal.**

This Court affirmed Bernard's sentence on direct appeal. *Inter alia*, it relied on expert testimony of future dangerousness that was not even admitted against Bernard and that was later deemed so unscientific and unreliable that its proponent has been barred from testifying as an expert in Texas courts. Such evidence, of course, would likely have never been introduced in the first place, had Smith followed the appointment procedures of 18 U.S.C. § 3005, because competent defense counsel would have objected to it.[5] *Compare Bernard*, 299 F.3d at 482 (on

---

[5] ROA.1312-15.

direct appeal, relying on Dr. Richard Coons's testimony to support death sentence), *with Coble v. State*, 330 S.W.3d 253 (Tex. Crim. App. 2010) (holding that Dr. Coons' "expert" testimony predicting a capital defendant's future dangerousness was too unreliable to admit under Tex. R. Evid. 702); *but see United States v. Bernard*, 762 F.3d 467, 475 (5th Cir. 2014) (denying COA for § 2255 proceeding, rejecting as not "reasonably debatable" Bernard's argument that counsel should have sought a limiting instruction to clarify for jurors that Coons' damaging testimony was not even offered against Bernard).

**D. After Bernard sought collateral review, Judge Smith failed to take any action at all on the case for more than seven years, again suggesting his continuing impairment.**

On June 14, 2004, Bernard moved to vacate his conviction and death sentence under 28 U.S.C. § 2255. ROA.21. Bernard's initial motion raised nine grounds for relief and was accompanied by substantial evidence, including detailed affidavits from both lay witnesses and experts. ROA.466-1170. Bernard then filed an amended motion on December 8, 2004. ROA.1241-1458. The Government's response did not include a single declaration or other document challenging or contradicting the declarations that Bernard had submitted in support of his claims. ROA.1459-1690.

The last pleading pertaining to Bernard's § 2255 motion, his Reply to the Government's Response to his motion, was filed on February 7, 2005. ROA.1693-

1746. Bernard's Reply, like his § 2255 motion itself, was accompanied by additional substantial documentary evidence.

The docket reflects no further activity (other than one CJA payment) for the ensuing *seven and one-half years*. ROA.23. Other than Smith's documented unfitness, the record on appeal provides no explanation for Smith's wholesale failure to take any action on this capital case for the better part of a decade.

In September 2012, Smith summarily denied all requested relief, including all then-pending motions for factual development, such as discovery and a hearing, and preemptively denied a COA. ROA.1809-10. His order could cite no proof rebutting Mr. Bernard's evidentiary submissions, as the Government had submitted no evidence. To a great degree, the denial of relief rested on speculation about the purportedly strategic bases for trial counsel's decisions and omissions, including their failure to investigate, despite the fact that the record was devoid of any evidence about trial counsel's actual motivations. ROA.1775 n.5; ROA.1787-1801.

And in his subsequent order reflexively denying Bernard's detailed motion for reconsideration, Smith simply shut his eyes to the existence of additional expert evidence demonstrating the errors in his original order denying relief. ROA.2041-45; ROA.1820-2006.

For example, in denying the original § 2255 motion, Smith—without having allowed any factual development—excused trial counsel's unexplained failure to

secure funds for experts who could have challenged the Government's forensic evidence. ROA.1788. Smith contended that "with limited funds available for experts nothing would have been accomplished except a decrease in funds if trial counsel had attempted to retain experts to contest the experts presented by the Government." ROA.1788. The court thus suggested that it would have been pointless for trial counsel to seek their own experts, because no favorable evidence could have been developed through them.

Seeking reconsideration, Bernard submitted affidavits from two prominent forensic experts challenging the key factual underpinnings of the single death sentence he had received. ROA.1824; ROA.1988-2003. In response, and without even acknowledging the existence of these affidavits, Smith dismissed Bernard's motion under FRCP 59(e) as "present[ing] nothing beyond what was presented in [his] original § 2255 motion" in support of his claims of ineffective assistance of counsel. ROA.2043. That characterization was simply false. These affidavits showed specifically that independent experts would have disputed the Government's forensic evidence on key points. Mr. Bernard's evidence thus firmly rebutted the view, expressed in Smith's original order, that trial counsel would have accomplished nothing helpful by seeking their own experts. At a minimum, given the evidentiary picture at that juncture, any reasonable jurist would have found Bernard's IAC claims worthy of further factual development.

**E. Employing a standard that the Supreme Court subsequently rejected as too onerous, this Court denied Bernard a COA that would have allowed him to challenge the merits of Judge Smith's rulings.**

Bernard then applied to this Court for a COA, seeking to challenge Smith's wrongful and premature termination of the § 2255 proceeding. ROA.2046. He briefed the issue properly presented at that juncture, namely, whether "reasonable jurists could debate whether . . . [his] petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000) (internal quotation marks omitted). This Court refused to issue a COA on any issue. *United States v. Bernard*, 762 F.3d 467 (5th Cir. 2014). Subsequent to that ruling, the United States Supreme Court ruled—effectively for the third time in fourteen years—that the COA analysis routinely employed by this Court imposed "too heavy a burden on the prisoner[.]" *Buck v. Davis*, 137 S. Ct. 759, 774 (2017); *see also Tennard v. Dretke*, 542 U.S. 274, 283-89 (2004); and *Miller-El v. Cockrell*, 537 U.S. 322, 341-48 (2003). That this Court placed too heavy of a burden on Mr. Bernard in denying a COA is demonstrated by the fact that Bernard's § 2255 motion (as summarized above and below) plainly contained issues which a reasonable jurist could believe warranted further development.

**F. Seeking relief from the effect of these procedural defects on the judgment in his § 2255 proceeding, Bernard filed his Rule 60(b) Motion.**

Bernard filed a Rule 60(b) motion, alleging that the synergistic effect of Smith's unfitness and this Court's application of an incorrect COA standard had deprived him of meaningful collateral review. District Judge Lee Yeakel concluded that the motion was in substance a successive application for relief under § 2255, and dismissed it without prejudice for want of jurisdiction ROA.2253-59. This appeal follows. ROA.2260.

## IV. SUMMARY OF ARGUMENT

A COA should issue in this case because reasonable jurists could debate whether Bernard satisfied the prerequisites to reopen his case under Rule 60(b)(6). The circumstances of this case are extraordinary and should trouble any reasonable jurist. Both the trial in which Brandon Bernard was sentenced to death, and the collateral review proceeding intended to ensure that his rights had been properly protected in that trial, were presided over by an unfit judge who was derelict in his duties. Smith's actions in this case give evidence of his ongoing impairment. For more than seven years, he did absolutely nothing; when he finally decided to act, he misconstrued the facts and the law to wrongfully deprive Bernard of any meaningful collateral review of his sentence. Smith's illegal behaviors, compromised ethics, and outright hostility to judicial norms ultimately forced him from office. But Smith's

resignation came too late for Bernard, and the procedural defects that marred Bernard's case at the district court level went uncorrected because this Court applied a COA review standard more onerous than Congress contemplated. The Supreme Court has since issued an opinion in another case to correct that practice; but again, that correction came too late for Bernard. To bring these procedural defects before the courts in hopes of obtaining the measure of justice to which § 2255 entitled him, Bernard filed a Rule 60(b) motion seeking to vacate the district court's judgment denying post-conviction relief.

The district court denied that motion, believing that it lacked jurisdiction to evaluate the impact of the procedural defects Bernard had alleged. Specifically, the court deemed Bernard's 60(b) motion to be in fact a subsequent § 2255 motion, since its end goal was to vacate Bernard's wrongfully imposed death sentence.

That reasoning is at least debatable, if not flatly wrong, as it would have the effect of altogether eliminating Rule 60(b) from the rules of civil procedure for § 2255 litigants. The debatability of this issue is apparent from even a cursory examination of precedent, which recognizes the vitality and proper purpose of Rule 60(b) motion in extraordinary circumstances like the ones presented by this case. This court should grant a COA and order full briefing on the merits of whether the district court erred in ruling that Bernard did not make the necessary showing to reopen his case under Rule 60(b)(6).

**V. ARGUMENT**

**A. The COA standard is satisfied here because a reasonable jurist could find Bernard's claim—that unusual procedural defects in the course of his § 2255 action sapped the proceeding of any integrity—to warrant further development; the COA standard does not require Bernard to show at this juncture that he will prevail in this appeal if a COA is granted and the merits are reached.**

Bernard is entitled to a Certificate of Appealability under 28 U.S.C. § 2253(c)(2) because he has made a "substantial showing of the denial of a constitutional right"— namely the due process that should have attached to his § 2255 proceedings. To meet this standard, he need not demonstrate that he will ultimately prevail on the merits if this Court grants plenary review, but only that "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack*, 529 U.S. at 483-84 (internal quotation marks omitted); *see also Miller-El*, 537 U.S. at 336-38 ("a claim can be debatable even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that petitioner will not prevail").

A COA may issue with respect to procedural issues, such as the district court's decision here that it lacked jurisdiction to evaluate Bernard's Rule 60(b)(6) motion, if reasonable jurists could debate both the merits of the underlying claim and the correctness of the district court's procedural ruling. *Slack*, 529 U.S. at 484. *See also*,

16

*e.g.*, *United States v. Rivas-Lopez*, 678 F.3d 353, 356 (5th Cir. 2012) (noting that the court had earlier granted COA to decide whether the district court erred in denying movant's IAC claim without an evidentiary hearing); *United States v. Gonzalez*, 493 Fed. Appx. 541, 543 (5th Cir. 2012) (same).

The fact that Bernard faces execution if this appeal is unsuccessful is a proper consideration in deciding whether to grant COA, and "[i]n a death penalty case any doubts as to whether a COA should issue must be resolved in the [movant's] favor." *Stevens v. Epps*, 618 F.3d 489, 502 (5th Cir. 2010) (internal quotation, citations and alterations omitted); *accord Buck*, 137 S.Ct. at 779 (quoting J. Kagan's dissent in a denial of certiorari in *Buck v. Thaler*, 565 U.S. 1022 (2011), "[e]specially in light of the capital nature of this case … Buck has presented issues that 'deserve encouragement to proceed further'" (quoting *Miller-El*, 537 U.S. at 327)).

Further, a COA should issue even if only a single judge finds that Bernard's Rule 60(b)(6) motion "deserves encouragement to proceed further." Because §2253(c) requires only "a judge" for issuance of a COA, a panel majority is not required. *See Miller-El*, 537 U.S. at 336 (prisoner who seeks to appeal must first "obtain a COA from *a* circuit justice or judge") (emphasis added); *Thornburg v. Mullin*, 422 F.3d 1113, 1118 (10th Cir. 2005) (noting that "a member" of the court granted COA in capital case); *Reid v. True*, 349 F.3d 788, 796 (4th Cir. 2003) (if the

17

movant's showing regarding a particular issue satisfies "any member of the panel," then "the court will grant a COA as to that issue").

When deciding the COA issue, this Court should also exercise caution in applying its decisional law from §2254 cases. Those appeals involve "highly deferential" review of state court judgments for reasonableness, rather than *de novo* consideration of how federal law should apply to the facts. *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002). Such precedents may have little application in the present context, where no such systemic deference applies.

### B. A fundamental purpose of Rule 60(b) is to provide an exception to finality when fairness demands it.

Rule 60(b) explicitly authorizes a district court to lift the effect of "a final judgment, order, or proceeding" for "any other reason that justifies relief." FRCP 60 (b)(6). This basis is sometimes called the "catchall" provision; its "whole purpose is to make an exception to finality" in circumstances where fairness demands it. *See Gonzalez v. Crosby*, 545 U.S. 524, 529 (2005).

The Supreme Court has recognized that a Rule 60(b) motion may properly be brought to cure a "defect in the integrity of [previously litigated] federal habeas proceedings," when those defects were produced by actors or factors outside the control of the petitioner or his counsel. *Gonzalez*, 545 U.S. at 532 and n. 5. Cognizable defects include the misapplication of procedural rules in ways that frustrate meaningful habeas review. *Id*. at 526.

The Fifth Circuit has likewise called Rule 60(b) a "grand reservoir of equitable power to do justice in a particular case." *Seven Elves, Inc. v. Eskenazi*, 635 F.2d 396, 402 (5th Cir. 1981) (citation omitted). Like *Gonzalez*, *Seven Elves* rightly recognizes that the desire for finality in a judgment must yield to the command of conscience that justice be done, and the rule should be "liberally construed" to provide that justice:

> By its very nature, the rule seeks to strike a delicate balance between two countervailing impulses: the desire to preserve the finality of judgments and the "incessant command of the court's conscience that justice be done in light of all the facts."
>
> ….
>
> In this light, it is often said that the rule should be liberally construed in order to do substantial justice. What is meant by this general statement is that, although the desideratum of finality is an important goal, the justice-function of the courts demands that it must yield, in appropriate circumstances, to the equities of the particular case in order that the judgment might reflect the true merits of the cause.

635 F.2d at 401-02 (internal citations omitted).

The Supreme Court recently reiterated these equitable points in *Buck v. Davis*, 137 S. Ct. 759 (2017). While the *Buck* Court agreed that Rule 60(b)(6) relief is available only in extraordinary circumstances, it also emphasized that the rule vests the court that entered the judgment with "wide discretion" to evaluate whether such circumstances exist, specifically listing the "the risk of injustice to the parties" and the "risk of undermining the public's confidence in the judicial process" as valid

factors to be considered. *Buck*, 137 S.Ct. at 777-78 (quoting *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 863-64 (1099)). Ultimately, the Court in applying these factors ruled that the district court had abused its discretion in denying Buck's Rule 60(b) motion.

### C. A COA should issue here.

In light of the foregoing decisions, a reasonable jurist could certainly debate Bernard's claim that procedural defects outside of his control corrupted his collateral review process, and that those extraordinary circumstances brought his case within the compass of Rule 60(b). The surrounding facts are plainly extraordinary. Smith, the judge who presided over all the proceedings, was chased off the bench for lawless and disgraceful conduct, and a witness intimately familiar with Smith's behavior described him as being so impaired a few months before Bernard's death penalty trial that he was "not functional." And no functional improvement is suggested by Smith's inexplicable failure to address the associated § 2255 petition for more than seven years before summarily denying it in an order that ignored critical evidence. While this Court did not find the district court's adverse rulings from the § 2255 proceeding (including his wholesale denial of discovery or an evidentiary hearing) reasonably debatable, it reached that conclusion by applying an approach to the COA standard that has since been invalidated by the Supreme Court. Could any reasonable

jurist really deny that these extraordinary circumstances may well have resulted in a risk of injustice to Bernard or undermined public confidence in the judicial process?

Despite all this, the district court found that it lacked jurisdiction to consider Bernard's Rule 60(b)(6) motion. ROA.2259. Mocking Bernard's arguments as "farcical," it called his pleading "the very definition of a successive [§ 2255] motion" because "even a cursory examination" revealed that its "true intent" was to resurrect the constitutional claims Bernard had unsuccessfully advanced in his § 2255 motion and have them considered "afresh." ROA.2256. But intemperate words cannot conceal the flaws in the district court's rationale.

The fact that Bernard's 60(b) motion ultimately seeks an opportunity to relitigate the merits is fully consistent with *Gonzalez*'s description of a proper Rule 60(b)(6) motion pertaining to a judgment denying habeas relief. The Tenth Circuit once spoke broadly, interpreting *Gonzalez* as meaning that that a Rule 60(b) motion in a habeas proceeding is barred if it "lead[s] inextricably to a merits-based attack on the disposition of a prior habeas petition." *Spitznas v. Boone*, 464 F.3d 1213 (10th Cir. 2006). But the court subsequently clarified that this statement

> should not be read too expansively. [It] certainly should not be read to say that a motion is an improper Rule 60(b) motion if success on the motion would ultimately lead to a claim for relief under § 2255. What else could be the purpose of a 60(b) motion? The movant is always seeking in the end to obtain § 2255 relief. The movant in a true Rule 60(b) motion is simply asserting that he did not get a fair shot in the original § 2255 proceeding because its integrity was marred by a flaw that must be repaired in further proceedings.

21

*In re Pickard*, 681 F.3d 1201, 1206 (10th Cir. 2012).

Second, to the extent that the district court's order suggests that Bernard was trying to conceal the fact that he hopes to win fair consideration of claims that were previously shoved aside without meaningful review, *see* ROA.2256, that insinuation is baseless. Bernard hardly hid that expectation or attempted to "disguise" his Rule 60(b)(6) motion. Rather, Bernard straightforwardly declared that the court should "vacate[] the judgment that terminated the habeas proceeding and consider [his] § 2255 Motion anew." ROA.2127. While Bernard wants the merits of his § 2255 claims reviewed, that self-evident fact is not a basis upon which to deny relief under Rule 60(b), since the very purpose of a motion under that Rule is to reopen the proceeding to address the merits. *Pickard*, 681 F.3d at 1206. Yet, the district court based its denial of Bernard's 60(b) motion on this mistaken characterization. The district court's approach cannot be reconciled with *Gonzalez* and *Buck*, because it would make Rule 60(b) relief categorically unavailable to a habeas litigant who was denied due process by procedural defects for which he was not responsible.

Third, an "intent to resurrect constitutional claims" cannot be equated with a "successive motion" when the prior litigation was marred by procedural defects— brought about by neither Bernard nor his counsel—that fatally undermined the integrity of the proceedings. The district court's own order appears to acknowledge this point by citing *In re Coleman*, 768 F.3d 367, 371-72 (5th Cir. 2014), ROA.2256,

22

and of course *Gonzalez* itself stands for the same proposition. *Gonzalez*, 545 U.S. at 532. But after giving "lip service" to *Gonzalez*, the district court failed to meaningfully apply it.

Simply put, the district court's order nowhere addresses the elephant in the room. What can account for Smith's otherwise inexplicable behaviors—such as his refusal to grant a hearing on Bernard's IAC claim, which challenged the shoddy performance of the lawyers Smith appointed after refusing to follow the procedures mandated by 18 U.S.C. § 3005; his complete failure to take any action whatsoever on Bernard's § 2255 case for seven and half years; or his either overlooking or ignoring the declarations of forensic experts accompanying Bernard's motion for reconsideration, which directly undercut the factual premise for his sole death sentence? The likely, if inconvenient, answer is this: during the pendency of Bernard's § 2255 proceeding, Smith continued to be rendered unfit to preside by the same serious impairment he is now known to have been struggling with in the months before Bernard's case first landed on his docket in 1999. That inference best explains the gross procedural irregularities that marked Smith performance, and the district court altogether refused to confront it.

And although it does note that this Court "denied review of seven of the allegations … on appeal", ROA.2257, the district court's order likewise wholly fails to answer Bernard's argument that this Court's first examination of Smith's denial

of relief under § 2255 was tainted by the same faulty approach to the COA standard that the Supreme Court later forcefully repudiated in *Buck*. The district court's order did not analyze *Buck* at all. This is no small failing, since *Buck* rebuked this Court for effectively "invert[ing] the statutory order of operations" required by 28 U.S.C. § 2253 when it treated a habeas applicant who had not shown that he should prevail on the merits as *ipso facto* not entitled to a COA. *Buck*, 137 S. Ct. at 774. That approach, the Court held, placed "too heavy a burden on the prisoner *at the COA stage*." *Id*., citing *Miller-El*, 537 U.S. at 336-337 (emphasis in *Buck*).[6] This Court's 2014 decision in Bernard's 2255 appeal followed exactly the same path in denying a COA by pre-judging the merits of Bernard's case.

The district court's ruling also fails to address *Buck*'s direction that a court weighing a motion under Rule 60(b) should consider the "risk of injustice to the parties" and the "risk of undermining the public confidence in the judicial process" if the judgment is left undisturbed. In so doing, the district court failed to address or acknowledge the broad equitable jurisdictional authority that Rule 60(b)(6) provides, as discussed in *Gonzalez*, *Seven Elves*, and *Buck*, 137 S.Ct. at 778.

---

[6] Having found that this Court had demanded too great a showing of error when it denied Buck a COA, the Court went on to address the merits and grant relief. *Id*. at 780.

## VI. CONCLUSION

The Rule 60(b) proceeding below arose from the confluence of two extraordinary procedural defects. Their synergistic effect on the fairness of Bernard's § 2255 proceeding warrants further development.

The problems that led to Judge Smith's abrupt retirement, his casual disregard for vital procedural protections during his tenure on the bench, and the fact that he simply ignored Bernard's compelling § 2255 petition for more than seven years without explanation, all support the conclusion that Smith was unable to, and thus did not, fairly consider Bernard's motion.

Thereafter, Bernard was denied a fair opportunity to seek appellate review of Smith's unreasonable decisions as a consequence of this Court's then-prevailing interpretation of the COA requirement, which has since been squarely repudiated by the Supreme Court in *Buck*.

As Justice Frankfurter thoughtfully cautioned, "[w]isdom too often never comes, and so one ought not to reject it merely because it comes late." *Henslee v. Union Planters Nat. Bank & Trust Co.*, 335 U.S. 595, 600 (1949) (Frankfurter, J., dissenting). It is not too late for this Court to provide the procedural regularity that to date has been missing from the judicial review of Bernard's constitutional claims for relief from his death sentence. The Court can and should do that by granting a

COA on this issue so that the denial of Bernard's Rule 60(b) motion can be fully briefed and properly analyzed.

DATED this 12th day of April, 2018.

Respectfully submitted,

Robert C. Owen
Bluhm Legal Clinic
Northwestern Pritzker School of Law
375 East Chicago Avenue
Chicago, Illinois 60611-3069
312.503.0135 voice
312.503.8977 fax
robert.owen@law.northwestern.edu

John R. Carpenter
Asst. Federal Public Defender
1331 Broadway, Suite 400
Tacoma, Washington 98402
253.593.6710 voice
253.593.6714 fax
john_carpenter@fd.org

**CERTIFICATE OF SERVICE**

I hereby certify that on April 12, 2018, I electronically filed the foregoing Brief in Support of Application for Certificate of Appealability with the Clerk of the Court using the CM/ECF system which will send notification of filing to the parties associated with the case.

*s/ John R. Carpenter*
John R. Carpenter, Washington Bar No.: 23301
Asst. Federal Public Defender
Western District of Washington
1331 Broadway, Suite 400
Tacoma, WA 98402
Phone: (253) 593-6710 / Fax: (253) 593-6714
Email: john_carpenter@fd.org

# CERTIFICATE OF COMPLIANCE

Counsel certifies that:

1. Exclusive of the portions exempted by 5th Cir. R. 32, this petition complies with Fed. R. App. P. 32, and contains 6,005 words, and 541 text lines.

2. This petition is printed in a proportionally spaced, Times New Roman typeface using 14 point font in text and 13 point font in footnotes.

3. Upon request, undersigned counsel will provide an electronic version of this brief and/or copy of the word/page printout to the Court.

4. Undersigned counsel understands that a material misrepresentation in completing this certificate, or circumvention of the type-volume limits in 5th Cir. R. 32.2.7, may result in the Court's striking this petition and imposing sanctions against the person who signed it.

*/s John R. Carpenter*
John R. Carpenter, Washington Bar No.: 23301
Asst. Federal Public Defender
Western District of Washington
1331 Broadway, Suite 400
Tacoma, WA 98402
Phone: (253) 593-6710 / Fax: (253) 593-6714
Email: john_carpenter@fd.org