No. 18-70008

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

UNITED STATES OF AMERICA,

Respondent-Appellee,

v.

BRANDON BERNARD,

Defendant-Appellant.

On appeal from the United States District Court
for the Western District of Texas at Waco
District Court Case No. 6:04-CV-164

The Honorable Lee Yeakel,
United States District Judge

**REPLY BRIEF IN SUPPORT OF
APPLICATION FOR CERTIFICATE OF APPEALABILITY**

Robert C. Owen
Bluhm Legal Clinic
Northwestern Pritzker School of Law
375 East Chicago Avenue
Chicago, IL 60611
Phone: (312) 503-0135
Email: robert.owen@law.northwestern.edu
Texas Bar No.: 15371950

John R. Carpenter
Asst. Federal Public Defender
1331 Broadway, Suite 400
Tacoma, Washington 98402
Phone: (253) 593-6710
Email: john_carpenter@fd.org
Washington Bar No.: 23301

# TABLE OF CONTENTS

1.  While Mr. Bernard's Rule 60(b) motion, if successful, would require the district court to reexamine the merits of the claims asserted in his § 2255 motion, that fact alone does not transform his pleading into an impermissible successive application for post-conviction relief. ............. 2

2.  The substantial evidence that former Judge Smith was suffering from serious impairments, and that his performance in adjudicating Mr. Bernard's 2255 motion was affected by those impairments, is more than sufficient to require full development. ...................................................... 5

CERTIFICATE OF SERVICE ..................................................................... 11

CERTIFICATE OF COMPLIANCE ............................................................. 12

# TABLE OF AUTHORITIES

**Federal Cases**

*Buck v. Davis*,
137 S.Ct. 759 (2017) ............................................................... 2

*Coleman v. Stephens* (*In re Coleman*),
768 F.3d 367 (5th Cir. 2014) ................................................ 2

*Gonzalez v. Crosby*,
545 U.S. 524 (2005) ....................................................... 2, 3, 7, 8

*In re Pickard*,
681 F.3d 1201 (10th Cir. 2012) ......................................... 3, 4, 5

*Spitznas v. Boone*,
464 F.3d 1213 (10th Cir. 2006) ............................................... 3

**Federal Statutes**

18 U.S.C. § 1503 .................................................................... 7

18 U.S.C. § 2255 ................................................................. 8, 9

18 U.S.C. § 3005 .................................................................... 9

28 U.S.C. § 8 ......................................................................... 6

28 U.S.C. § 2244 ................................................................... 1

28 U.S.C. § 2253 ................................................................... 2

28 U.S.C. § 2255 ..................................................... 1, 2, 3, 4, 5, 6

**Other**

5th Cir. R. 32 ...................................................................... 11

Fed. R. App. P. 32 ............................................................... 11

Fed. R. Civ. P. 60(b) .................................................... 1, 2, 3, 8

The government makes essentially two contentions in opposing the issuance of a Certificate of Appealability that would permit full consideration of this death penalty appeal. First, parroting the district court, the government maintains that if granting Mr. Bernard's motion under Fed. R. Civ. P. 60(b) would entail reexamining the merits of former Judge Smith's prior decision denying relief under 28 U.S.C. § 2255, then his motion is perforce a successive application for relief and thus barred by 28 U.S.C. § 2244. *See* Brief in Opposition ("Opp.") at 8 ("§ 2255 motion in disguise"). Second, the government repeatedly implies that Mr. Bernard's 60(b) motion was illegitimate because Judge Smith's impairment is unsubstantiated as a factual matter. *See*, *e.g.*, Opp. at 1, 4, 5 ("alleged unfitness"), 6 ("speculative allegations").

The government's first contention ignores the authority cited in Mr. Bernard's brief supporting his request for a COA and in any event proves too much, as any successful Rule 60(b) motion will *necessarily* result in reconsideration of an earlier merits decision. Its second argument would have this Court turn a blind eye to undisputed, sworn testimony about the degree of former Judge Smith's impairment shortly before Mr. Bernard's trial and the unusual circumstances of the § 2255 proceeding that are consistent with his continued impairment.

Finally, the government's insistence that a COA is unwarranted because Mr. Bernard's appeal is supposedly meritless encourages this Court to repeat the legal error that required correction by the Supreme Court just a year ago. *Buck v. Davis*, 137 S.Ct. 759 (2017), made plain that a court of appeals may not condition the issuance of a COA on a showing that the contemplated appeal is meritorious, because the governing statute requires only a demonstration that reasonable jurists could differ about the questions presented. *See* 28 U.S.C. § 2253. For all these reasons, the Court should grant a COA to permit full development of the important issues in this capital case, where the underlying facts are disturbing and the stakes are at their highest.

1. **While Mr. Bernard's Rule 60(b) motion, if successful, would require the district court to reexamine the merits of the claims asserted in his § 2255 motion, that fact alone does not transform his pleading into an impermissible successive application for post-conviction relief.**

The government employs a slight-of-hand in arguing against issuance of a COA. First, it gestures broadly toward accepting the principle that Rule 60(b) allows a district court to reopen the judgment in a habeas proceeding if the prior decision was affected by "some defect in the integrity of the … proceeding[]." Opp. at 6 (citing *Gonzales v. Crosby*, 545 U.S. 524, 532 (2005)); *id.* at 7 (citing *In re Coleman*, 768 F.3d 367, 371-72 (5th Cir. 2014)). But then it advances without qualification the claim that any motion "that

asserts or reasserts substantive claims of error actually attacking the validity of the movant's conviction [or sentence] may be treated as a successive Section 2255 motion." Opp. at 6. The government thus misleadingly implies that these two categories – valid Rule 60(b) motions on the one hand, and pleadings that require the reevaluation of challenges to the validity of the underlying conviction and sentence on the other – have no overlap. This is plainly untrue.

Nowhere does the government admit that a valid Rule 60(b) motion – one alleging that a procedural defect robbed the prior habeas proceedings of their integrity – will necessarily call on the district court to take a fresh look at the merits of the movant's claims for relief. Significantly, the government fails to acknowledge, much less distinguish, *In re Pickard*, 681 F.3d 1201 (10th Cir. 2012), cited in Mr. Bernard's supporting brief, where the Tenth Circuit made precisely this point. An earlier Tenth Circuit decision had read *Gonzalez* to bar any Rule 60(b) motion in a habeas proceeding that would "lead inextricably to a merits-based attack on the disposition of a prior habeas petition." *Spitznas v. Boone*, 464 F.3d 1213 (10th Cir. 2006). *Pickard* cautioned that this statement from *Spitznas* "should not be read too expansively," and "certainly should not be read to say that a [Rule 60(b)] motion [is] improper … if success on the motion would ultimately lead to a

claim for relief under § 2255." *Pickard*, 681 F.3d at 1206. As the *Pickard* court pointedly asked,

> What else could be the purpose of a 60(b) motion? The movant is always seeking in the end to obtain § 2255 relief. The movant in a true Rule 60(b) motion is simply asserting that he did not get a fair shot in the original § 2255 proceeding because its integrity was marred by a flaw that must be repaired in further proceedings.

*Id.* In short, the self-evident fact that Mr. Bernard ultimately wants the merits of his § 2255 claims reexamined was not a proper basis for rejecting his Rule 60(b) motion, since the very aim of any such motion is to reopen the proceedings for that purpose. *Pickard*, 681 F.3d at 1206. The government has no answer to *Pickard*'s logic.

Like the district court, the government also insinuates darkly that in district court Mr. Bernard was trying to conceal the fact that he hoped to win fair consideration of claims that previously had been shoved aside without meaningful review. *See* Opp. at 8 (likening Mr. Bernard's Rule 60(b) motion to a "2255 motion in disguise"). But Mr. Bernard's Rule 60(b) motion was no subterfuge. Here, an impaired judge with what the government breezily describes as "a reputation for drinking" (Opp. at 4 n.2) presided over proceedings that may ultimately result in Mr. Bernard's being strapped to a gurney and killed. Mr. Bernard has sought at all stages of the current litigation to force the legal system to confront the grave implications of that fact. It is

the government, not Mr. Bernard, who is urgently trying to deflect attention from a matter that should be the subject of open and serious scrutiny.

**2. The substantial evidence that former Judge Smith was suffering from serious impairments, and that his performance in adjudicating Mr. Bernard's 2255 motion was affected by those impairments, is more than sufficient to require full development.**

The government repeats over and over that no evidence bears out Mr. Bernard's complaint that former Judge Smith was suffering from serious impairments related, at a minimum, to alcohol abuse. Opp. at 4 ("alleged unfitness"); *id.* ("alleged lack of fitness"); *id.* at n.2 ("alleged impairments"); *id.* at 5 ("alleged unfitness"); *id.* at 6 ("speculative allegations"); *id.* at 7 ("alleged unfitness"); *id.* at 8 ("alleged unfitness"); *id.* at 9 ("speculative allegations"). Reading the government's opposition, one would think that Mr. Bernard's concerns about former Judge Smith's condition rest on nothing more than Mr. Bernard's unsupported say-so.

Nothing could be further from the truth. The government's defense of former Judge Smith's fitness consists only of half-heartedly repeating hollow words like "speculative" and "alleged."  By contrast, Mr. Bernard's contentions regarding the integrity of his initial § 2255 proceeding are substantiated by sworn testimony describing former Judge Smith's condition the year before Mr. Bernard was tried, plus other circumstances of the case

suggesting that the judge's condition persisted or worsened in the years that followed, as well as the findings of a formal judicial investigation into former Judge Smith's misconduct while he was on the bench.

To recount, testimony shows that around 1998, former Judge Smith was not just drinking alcohol during the workday, but was "not functioning" and was "falling apart," reportedly unable even to get himself to the courthouse, thus forcing him to cancel court obligations. ROA.2141-43. His judicial behavior over the year that followed could fairly be described as erratic, as he flouted the statutorily mandated process for appointing counsel in a federal capital prosecution, *see* Mr. Bernard's supporting brief at 6-7, and committed plain errors of law in overseeing the first death penalty trial in his court. *Id*. at 8. In presiding over Mr. Bernard's § 2255 proceeding, former Judge Smith was immobilized for *seven years*, and then issued a flurry of rulings in which he appeared unable to apprehend the factual record. *Id*. at 10-12.

Finally, and perhaps most significant for present purposes, a court-ordered investigation was conducted after the initial allegations of impropriety against former Judge Smith surfaced in 2014. That investigation found, *inter alia*, that during the inquiry former Judge Smith had suborned witnesses to

make "false factual assertions" supporting his false denials of wrongdoing, delaying the ultimate vindication of the complaints against him. ROA.2131.[1]

Together, these undisputed facts make a compelling case for impairment, corruption, or some toxic mix of the two. The very fact that former Judge Smith behaved so recklessly precisely when his conduct was under close scrutiny after 2014 strongly suggests that his behavior was being shaped by powerful influences beyond his control, *e.g.*, substance abuse, psychological impairment, or a combination of similar factors, all of which are disabilities that can endure for years. Moreover, the Judicial Council of the Fifth Circuit formally found that during a federally authorized investigation, then-Judge Smith actively solicited factually false statements from witnesses, intending to submit those statements to investigators so that they would reach the wrong result, and that those actions delayed the completion of the investigation. Such conduct collectively would appear to satisfy 18 U.S.C. §1503[2], and it is reasonable to expect that a sitting federal

---

[1] The investigation also uncovered other behavior by former Judge Smith that was either erratic or corrupt. For example, Smith allowed the lawyer representing him in the judicial misconduct investigation to continue to appear before him on other matters. Smith not only failed to recuse himself from those cases, but concealed his relationship with his personal attorney from the other party's counsel. ROA.2131-32.

[2] Under that section, anyone who corruptly "influences, obstructs, or impedes" the "due administration of justice," or endeavors to do so, is guilty of obstruction of justice. *Id*.

judge who committed such acts would be suspended from service and referred for possible impeachment, not simply disqualified for a year from assignment to new cases. The only circumstance that might suggest a less severe sanction would be that the judge's actions were not calculated or deliberate because, *e.g.*, he was struggling at the time with substance abuse problems or mental disorders.

Whatever a fully developed evidentiary record might show, the presently known evidence of former Judge Smith's serious impairment makes out a colorable showing of just the sort of "defect in the integrity of the federal habeas proceedings" contemplated by *Gonzalez*. At a minimum, the present record conclusively rebuts the government's characterization of the proof of former Judge Smith's impairment as "speculative." Instead, the evidence was sufficient to entitle Mr. Bernard to a full and fair hearing on his Rule 60(b) motion before the district court, to enable that court to assess in light of a complete factual record whether Mr. Bernard had met *Gonzalez*'s standard.

The government rejects the relevance of particular trial and post-conviction rulings by former Judge Smith as evidence that his impairment affected Mr. Bernard's § 2255 proceedings. *See*, *e.g*, Opp. at 7 (asserting that "nothing link[s]" Judge Smith's impairment to that post-conviction proceeding). But at present the findings of the Judicial Council investigation

that ultimately chased Judge Smith from the bench are the only conclusive evidence available to Mr. Bernard. Those findings show that former Judge Smith's impairment bookended Mr. Bernard's § 2255 proceedings. Former Judge Smith was impaired in 1998, when he imposed himself sexually upon a member of the court staff, and he was impaired in 2014-2015, when he worked to frustrate the course of the formal judicial inquiry into his behavior. At this initial stage, when Mr. Bernard has been denied any opportunity to develop additional facts, it is totally appropriate to point to former Judge Smith's behavior in the interim as evidence that the impairment remained active and likely affected Mr. Bernard's § 2255 proceedings.

It would be one thing if Bernard could cite only disagreements with discretionary rulings, such as any unimpaired judge might make. But here, there were both clear (and repeated) violations of a firm statutory mandate (*see* Supporting Brief at 7, describing multiple violations of 18 U.S.C. § 3005), and an inexplicable *seven-year* delay during which former Judge Smith took no action whatsoever on Mr. Bernard's § 2255 case. Those facts strongly support the inference – which could be conclusively proven through a full and fair hearing – that former Judge Smith's impairment affected Mr. Bernard's § 2255 proceeding. At a minimum, in a federal capital case these facts and circumstances warrant issuance of a COA.

DATED this 27th day of June, 2018.

Respectfully submitted,

_s/ Robert C. Owen_
Robert C. Owen
Bluhm Legal Clinic
Northwestern Pritzker School of Law
375 East Chicago Avenue
Chicago, Illinois 60611-3069
312.503.0135 voice
312.503.8977 fax
robert.owen@law.northwestern.edu

_s/ John R. Carpenter_
John R. Carpenter
Asst. Federal Public Defender
1331 Broadway, Suite 400
Tacoma, Washington 98402
253.593.6710 voice
253.593.6714 fax
john_carpenter@fd.org

**CERTIFICATE OF SERVICE**

I hereby certify that on June 27th, 2018, I electronically filed the foregoing Reply in Support of Application for Certificate of Appealability with the Clerk of the Court using the CM/ECF system which will send notification of filing to the parties associated with the case.

*s/ John R. Carpenter*
John R. Carpenter, Washington Bar No.: 23301
Asst. Federal Public Defender
Western District of Washington
1331 Broadway, Suite 400
Tacoma, WA 98402
Phone: (253) 593-6710 / Fax: (253) 593-6714
Email: john_carpenter@fd.org

# CERTIFICATE OF COMPLIANCE

Counsel certifies that:

1. Exclusive of the portions exempted by 5th Cir. R. 32, this document complies with Fed. R. App. P. 32, and contains 2095 words, and 175 text lines.

2. This petition is printed in a proportionally spaced, Times New Roman typeface using 14 point font in text and 13 point font in footnotes.

3. Upon request, undersigned counsel will provide an electronic version of this brief and/or copy of the word/page printout to the Court.

4. Undersigned counsel understands that a material misrepresentation in completing this certificate, or circumvention of the type-volume limits in 5th Cir. R. 32.2.7, may result in the Court's striking this pleading and imposing sanctions against the persons who signed it.

*/s John R. Carpenter*
John R. Carpenter, Washington Bar No.: 23301
Asst. Federal Public Defender
Western District of Washington
1331 Broadway, Suite 400
Tacoma, WA 98402
Phone: (253) 593-6710 / Fax: (253) 593-6714
Email: john_carpenter@fd.org